IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

BRYAN PORRAS                                                                      PETITIONER

v.                          NO. 4:25-cv-00365-LPR-PSH

DEXTER PAYNE                                                                     RESPONDENT

FINDINGS AND RECOMMENDATION

INSTRUCTIONS

The following Recommendation has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

In this case, filed pursuant to 28 U.S.C. 2254, petitioner Bryan Porras ("Porras") challenges his 2017 Sebastian County Circuit Court convictions of one count of murder in the first degree and several counts of committing a terrorist act. It is recommended that this case be dismissed because his petition for writ of habeas corpus is untimely.

The events giving rise to Porras' trial were summarized by the Arkansas Court of Appeals. The events were as follows:

> ... Porras and three codefendants—Alberto Chavez, Ryan Oxford, and Jorge Chirinos—were members of a gang called Slangez 96.1 The eighteen-year-old deceased victim, Justin Lopez, and Trey Miller were members of a rival gang called Clout Boyz. Lopez was killed when a barrage of gunfire from two assault rifles hit the camper trailer where he was visiting Miller.
>
> Porras, Chavez, Oxford, and Chirinos were together at a wedding party at the Fort Smith Convention Center on the night of the incident. All four men were wearing purple bandannas around their necks. Jamie Aceves Garcia testified that Porras approached him and demanded to know where the Clout Boyz were "because he was having problems with them." Porras threatened to shoot Garcia if he did not tell him where they were. Garcia knew the members of the Clout Boyz gang; but, as he told Porras, he did not know where they were. Thereafter, Garcia saw Porras and the other three codefendants leave the party and return about an hour later in a four-door gray car.

2

At the time of the incident, Miller was living in a camper trailer located in the backyard of his grandparents' home. Around 10:00 p.m., Miller and Lopez were alone and sitting at the kitchen table inside the trailer when, through the open door of the trailer, they noticed a car driving into the alley behind Miller's grandparents' home. After the two heard the backyard gate being opened, Lopez grabbed a shotgun and called out to an approaching figure. At that point, the person yelled, "Shoot, shoot, shoot," and numerous rounds were fired from assault rifles into the trailer. Miller stated that as the shooters were leaving, he heard "whooping and hollering" like they were "celebrating." Lopez was killed by a bullet shot from an AR-15 that entered the back of his skull and fragmented. Miller was not injured. There were cartridge casings located at the crime scene, and twenty-eight bullet-impact points were found inside the trailer.

Officers were dispatched to the scene at 10:31 p.m. They identified the codefendants as suspects and obtained warrants to search Porras's and Oxford's apartments. The officers recovered an AK-47 semiautomatic assault rifle, an AR-15 semiautomatic assault rifle, approximately four hundred rounds of ammunition, and a purple bandanna from Oxford's apartment. They recovered a purple bandanna, two "Jason" Halloween masks, a composition notebook/journal, an AR-15 semiautomatic assault rifle, and a quantity of .223-caliber ammunition from Porras's apartment. The AR-15 and ammunition were hidden behind a water heater in the bedroom closet that contained male clothing, while the bandanna was discovered behind a freezer. Ballistic comparison of the bullet fragment recovered during Lopez's autopsy revealed that it was fired from the AR-15 seized during the search of Porras's apartment. Shell casings found at the crime scene were also linked to the rifles seized. All of the .223-caliber shell casings found at the crime scene were ejected from the AR-15, and all of the recovered 76.2 x 39mm shell casings were ejected from the AK-47.

>    The composition notebook/journal seized from Porras's apartment contained drawings and rap lyrics referencing Slangez. A video recovered from Porras's cell phone showed him with the codefendants acting out a rap song referencing "Slangez 96" and "Clout Boyz Killa" and displaying firearms similar to those fired at the scene. Detective Chris George, who was assigned to the vice narcotics unit, tracked gang activity in Fort Smith. He testified that Slangez 96 and Clout Boyz were rival gangs, both with a presence in Fort Smith, and that Slangez 96 members wore purple to show their affiliation.
>
>    Chirinos testified that he, Porras, Oxford, and Chavez went to the wedding party on the night of the shooting. While there, Porras asked Garcia where the Clout Boyz were. The four codefendants left the party after Porras learned that members of the Clout Boyz were in Miller's trailer. As Porras was driving to the trailer, he instructed the others to put on masks. Porras used a bandanna to cover his nose and mouth and wore a hoodie. He drove through the alley, stopped the car, and approached the trailer on foot. Porras was armed with the AK-47 and Chavez with the AR-15. Chirinos testified that when they heard sounds coming from inside the trailer, Porras came back through the gate yelling "shoot, shoot," and Porras and Chavez started shooting until they had emptied their magazines. After they left the crime scene, they took the rifles to Porras's apartment then went back to the wedding party until Porras's girlfriend called for him to pick her up from work.

See Porras v. State, 2024 Ark. App. 57, 684 S.W.3d 236, 241–242 (2024).

Porras was convicted and sentenced to seventy-three years in the Arkansas Division of Correction, "with his sentences being enhanced for using a firearm in the commission of the crimes and for being a habitual offender." See Porras v. State, 2018 Ark. App. 592, 2018 WL 6332856, 1 (2018).

Porras appealed his convictions. The state Court of Appeals found no reversible error and affirmed the convictions. See Porras v. State, 2018 WL 6332856. He sought rehearing, but his request was denied. A mandate was issued on January 16, 2019.[1] He thereafter had ten days to file a petition for review with the Arkansas Supreme Court, but he failed to do so by the January 28, 2019, deadline.[2]

On March 5, 2019, or thirty-five days after the expiration of the deadline for Porras to have filed a petition for review with the state Supreme Court, he represents that he placed a petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37 ("Rule 37 petition") in the prison mail system. He later filed an amended Rule 37 petition with the assistance of counsel. In the petitions, he challenged his convictions on several grounds. The state trial court, though, denied relief.

---

[1]   The state Court of Appeals, in denying Porras' subsequent petition for post-conviction relief, observed that "[t]he mandate was issued on January 16 and affirmed on January 24." See Porras v. State, 684 S.W.3d at 243. It is not clear what is meant by the mandate being "affirmed on January 24."

[2]   Rule 2-4(a) of the Rules of the Supreme Court and Court of Appeals of the State of Arkansas provides, in part, that "[a] petition to the Supreme Court for review of a decision of the Court of Appeals must be electronically filed within ten calendar days after the end of the Court of Appeals rehearing period." Respondent Dexter Payne represents, and the undersigned accepts, that because the tenth and final day for Porras to have filed a petition for review with the state Supreme Court fell on Saturday, January 26, 2019, "[he] had until Monday, January 28, 2019, to file his petition." See Docket Entry 10 at CM/ECF 7.

Porras appealed the denial of his Rule 37 petition. The state Court of Appeals found no reversible error and affirmed the denial of relief. See Porras v. State, 684 S.W.3d 236. He filed a petition for review, the state Supreme Court denied review, and a mandate was issued on April 18, 2024.

On April 15, 2025, Porras began this case by filing a petition for writ of habeas corpus with the assistance of counsel. In the petition, Porras challenged his convictions on several grounds.

Respondent Dexter Payne ("Payne") responded to the petition by filing the pending motion to dismiss. See Docket Entry 10. In the motion, he maintained that the petition should be dismissed because it is untimely. It was Payne's position that the one-year statute of limitations governing the petition at bar "ran from April 19, 2024, until Porras filed the pending petition on April 15, 2025, a period of 361 days." See Docket Entry 10 at CM/ECF 8. "Including the 35 days that transpired between the date Porras's conviction became final at the conclusion of direct review and the date that he initially filed his pro se petition for post-conviction relief, 396 days passed before he filed the pending petition." See Docket Entry 10 at CM/ECF 8.[3]

---

[3] Porras, who is represented by counsel, did not file a response to the motion, and the time for doing so has now passed.

A state prisoner has one year, or a total of 365 days, during which he may file a petition pursuant to 28 U.S.C. 2254. If he does not file his petition within that period, excluding any applicable periods of tolling, the petition is barred. 28 U.S.C. 2244(d) provides that the one-year limitations period begins from the latest of one of four dates or events.

Payne maintains that the limitations period in this case is that found at 28 U.S.C. 2244(d)(1)(A), which provides that the one-year limitations period begins on the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. Applying 28 U.S.C. 2244(d)(1)(A) to the facts of this case, he maintains that the one-year limitations period began on January 29, 2019, or the day after the deadline for filing a petition for review with the state Supreme Court. See King v. Hobbs, 666 F.3d 1132, 1135 (8th Cir. 2012) (limitations period begins day after deadline for filing petition for review with Arkansas Supreme Court).

Payne's position has merit and is adopted. The limitations period here is that found at 28 U.S.C. 2244(d)(1)(A). Porras had until January 28, 2019, to file a petition for review with the state Supreme Court. When he failed to do so, his convictions became final, and the one-year, or 365 day, limitations period began the following day, January 29, 2019.

On March 5, 2019, or thirty-five days after expiration of the January 28, 2019, deadline for filing a petition for review with the state Supreme Court, Porras represents that he placed his Rule 37 petition in the prison mail system. The undersigned accepts, for purposes of this Recommendation, that his Rule 37 petition was properly filed on that day.[4]

28 U.S.C. 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review is pending shall not be counted toward any period of limitations. Here, Porras' Rule 37 petition was properly filed on March 4, 2019, thereby stopping the one-year limitations period after thirty-five days.

The state trial court denied the Rule 37 petition, and Porras appealed the denial of relief. The state Court of Appeals found no reversible error and affirmed the denial of relief. He then filed a petition for review with the state Supreme Court. The appellate court denied review, and a mandate was issued on April 18, 2024. The following day, April 19, 2024, the one-year limitations period began again, and he had 330 days, or up to

---

[4] Payne devoted some of his response to discussing the application of the prison mailbox rule, the date Porras is deemed to have filed his Rule 37 petition, and whether the petition was properly filed for purposes of 28 U.S.C. 2244(d)(2). See Docket Entry 2. The undersigned has elected to bypass those issues and simply assumes, for purposes of this Recommendation, that his Rule 37 petition was properly filed on March 5, 2019, the date he represents that he placed the petition in the prison mail system. See Docket Entry 10, Exhibit B at CM/ECF 10.

and including March 17, 2025, to file a timely petition pursuant to 28 U.S.C. 2254.[5] Unfortunately, he did not file the petition at bar until April 15, 2025, or twenty-nine days after the expiration of the one-year, or 365 day, limitations period. As a result, his petition is untimely. The only question is whether there is a reason for tolling the one-year limitations period or otherwise excusing the untimely filing of his petition.

The one-year limitations period may be equitably tolled. See Gordon v. Arkansas, 823 F.3d 1188 (8th Cir. 2016). Equitable tolling "asks whether federal courts may excuse a petitioner's failure to comply with federal timing rules, an inquiry that does not implicate a state court's interpretation of state law." See Id. at 1195 (internal quotation omitted) (emphasis in original). Equitable tolling is warranted if the petitioner has been pursuing his rights diligently and some extraordinary circumstance stood in his way and prevented a timely filing. See Id.

---

[5] The calculation of the commencement, running, and tolling of the one-year limitations period involves counting 365 days. See May v. Kelley, No. 5:18-cv-00053-BSM-JTR, 2018 WL 7412983 (E.D. Ark. Dec. 28, 2018), report and recommendation adopted, No. 5:18-cv-00053-BSM (E.D. Ark. Feb. 22, 2019). The 365 days in the case at bar is calculated by adding thirty-five days (the number of days between Porras' convictions becoming final by the conclusion of direct review and the filing of his Rule 37 petition) and 330 days (the number of days between the day after the issuance of a mandate in connection with Porras' Rule 37 petition and the filing of the petition at bar). 330 days from April 19, 2024, was March 15, 2025. Because March 15, 2025, fell on a Saturday, Porras had until Monday, March 17, 2025, to file a timely petition pursuant to 28 U.S.C. 2254.

Here, equitable tolling is not warranted. Assuming, without deciding, that Porras has been pursuing his rights diligently, he has failed to show that an extraordinary circumstance stood in his way and prevented him from filing a timely petition. He has known of the grounds for relief he now advances since at least the conclusion of his trial, and nothing prevented him from raising them in a timely petition pursuant to 28 U.S.C. 2254.

Notwithstanding the foregoing, a showing of actual innocence may excuse the untimely filing of a petition pursuant to 28 U.S.C. 2254. See McQuiggin v. Perkins, 569 U.S. 383 (2013). "The actual innocence exception is demanding and seldom met and 'tenable actual-innocence gateway pleas are rare.'" See Story v. Kelley, No. 4:17-cv-00853-KGB, 2018 WL 3193807, 1 (E.D. Ark. 2018) (quoting McQuiggin v. Perkins, 569 U.S. 383, 386 (2013)). "A petitioner 'does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" See Story v. Kelley, 2018 WL 3193807, 1 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).

The actual innocence gateway affords Porras no benefit. He has offered no new evidence suggesting that he is innocent. His claims simply challenge the representation provided by his attorney.

In conclusion, Porras' petition is untimely as it was filed after the conclusion of the one-year limitations period. There is no reason for tolling the one-year limitations period or otherwise excusing the untimely filing of his petition. It is therefore time barred. For that reason, it is recommended that Payne's motion to dismiss be granted, <u>see</u> Docket Entry 10; Porras' petition be dismissed; all requested relief be denied; and judgment be entered for Payne. A certificate of appealability should also be denied.

DATED this 25th day of August, 2025.

_____
UNITED STATES MAGISTRATE JUDGE